IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| WILLIAM RAY THOMAS,<br><br>                Plaintiff,<br><br>    v.<br><br>BRIAN BELLEQUE, OSP Superintendent; T.<br>MANU, Lieutenant - STG OSP; and MITCH<br>MORROW, Deputy Director,<br><br>                Defendant. | CV-06-1626-ST<br><br>FINDINGS AND<br>RECOMMENDATION |

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, William Ray Thomas ("Thomas"), an inmate in the custody of the Oregon Department of Corrections ("ODOC"), filed this action on November 13, 2006, against the following defendants: Brian Belleque ("Belleque"), Superintendent of the Oregon State Penitentiary ("OSP"); T. Manu ("Manu"), OSP Security Threat Group Lieutenant; and Mitch Morrow ("Morrow"), Deputy Director of ODOC. Pursuant to 42 USC § 1983, Thomas alleges

1 - FINDINGS AND RECOMMENDATION

that these defendants violated his constitutional rights by transferring him from OSP to Snake River Correctional Institution ("SRCI") on August 16, 2006. Complaint, pp. 3-4. In particular, Thomas asserts that: (1) the transfer was inappropriate because SRCI is a medium custody facility while he has been a maximum custody inmate for nearly 15 years (Claim One); (2) defendant Manu and the "cell extraction team" used excessive force in removing him from his cell at OSP and effecting the transfer (Claim Two); and (3) the transfer was in retaliation for a statement Thomas made 12 years earlier about a cover-up at OSP regarding a conspiracy between OSP staff and Thomas to kill another inmate (Claim Three). As a result, Thomas seeks a transfer back to OSP and also seeks unspecified damages for the unjustified cell extraction.

Defendants now move for summary judgment against each of Thomas' claims asserting that: (1) Thomas did not exhaust his administrative remedies regarding the cell extraction; (2) *respondeat superior* liability is not available in § 1983 claims; (3) defendants did not violate Thomas' constitutional rights; and (4) defendants are entitled to qualified immunity. For the reasons that follow, defendants' motion should be granted and judgment should be entered in favor of defendants.

## LEGAL STANDARD

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but

2 - FINDINGS AND RECOMMENDATION

only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F2d 626, 631 (9th Cir 1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Id* (citation omitted). Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. *Id* at 631.

## UNDISPUTED FACTS

A review of the parties' fact statements and accompanying materials[1] reveals the following facts with respect to Thomas' incarceration and the events leading to the alleged constitutional violations:

Thomas is an inmate in ODOC custody, serving a life sentence without the possibility of parole. During the 14-year period between March 1993 and August 16, 2006, ODOC housed Thomas in various housing sections at OSP. *See* Bales Affidavit, Attachment 3.

In early June 2006, Thomas asked Belleque what he would do if Thomas stabbed a certain other inmate at OSP. Belleque responded that he would "bury" Thomas, meaning that he would see to it that Thomas was placed in the Disciplinary Segregation Unit ("DSU").

---

[1] Both parties have submitted documents with various attachments. Citations to affidavits, declarations, and depositions are identified by the last name of the affiant, declarant, or deponent, and citations are to the paragraph(s) of the affidavit, declaration or page(s) of the deposition transcript. All other citations are to the exhibit number of the parties' submissions.

3 - FINDINGS AND RECOMMENDATION

On the evening of June 18, 2006, Thomas snuck up on and attempted to kill that inmate by stabbing him in the back with a sharpened piece of wood. Premo Affidavit, Attachment 2; Oregon State Police Transcript of Taped Interview, attached to Plaintiff's Response In Defendant's Motion for Summary Judgment, Complaint 3, Retaliation (docket # 33). Thomas contends that the inmate he stabbed was disliked by other inmates and OSP staff and that, 12 years prior to the attack, several OSP officers, including Morrow (the present ODOC Deputy Director who was then a member of OSP staff) attempted to conspire with Thomas to kill that inmate.

Immediately after the attack OSP officials placed Thomas in a cell in OSP's DSU. Bales Affidavit, Attachment 3, p. 3. After a disciplinary hearing a few weeks later, Thomas received a sanction of six months in the DSU, with an end date of December 14, 2006. Premo Affidavit, Attachment 2, p. 3.

Early in the morning on August 16, 2006, Manu ordered Thomas to pack his belongings so he could be transferred. About half an hour later, Manu came back to the cell and ordered Thomas to back up and be restrained. Thomas objected, telling Manu and another OSP Lieutenant that he was not supposed to be transferred because he had been at OSP for 14 years, was a high threat (Level 4) inmate, and was currently housed in the DSU. Transcript of Thomas Disciplinary Misconduct Hearing, p. 3 (attached to Response In Defendant's Motion for Summary Judgment, Complaint 2, Cell Extraction (docket #32). Manu returned with additional officers who sprayed Thomas with mace, pulled him out of his cell, forced him to strip naked and change into transportation clothes, then transported him from OSP to Two Rivers Correctional Institution ("TRCI").

4 - FINDINGS AND RECOMMENDATION

Thomas remained at TRCI for nearly a month. Bales Affidavit, Attachement 3, p. 2. During that time, Thomas wrote letters to Morrow and to Stan W. Czerniak, Assistant Director of ODOC, asking for transfer back to OSP and asserting that he should not have been transferred while the inmate he stabbed was put on OSP mainline. While at TRCI, Thomas never formally filed any grievance concerning his transfer out of OSP. Nelson Affidavit, ¶ 13.

On September 13, 2006, prison officials again transferred Thomas, this time to SRCI. Bales Affidavit, Attachment 3, p. 2. On October 17, 2006, Thomas filed a grievance regarding his transfer from OSP. Hicks Affidavit, ¶ 11 & Attachment 4. The grievance requested transfer back to OSP based on the danger Thomas posed to staff in a medium level institution. However, prison officials returned that grievance to Thomas unprocessed and with a notation that inmates could not grieve housing assignments. *Id*.

On October 25, 2006, Thomas filed two additional grievances with OSP, one concerning the cell extraction and transfer to a medium security facility and the other alleging retaliation. Bales Affidavit, Attachments 4 & 5. Both of those grievances were denied for being filed outside of the 30 day window allowed for filing grievances. *Id*.

On July 11, 2007, Thomas was transferred back to OSP. *Id*, Attachment 3, p. 1.

## ANALYSIS

**I. No *Respondeat Superior* Liability**

Thomas names three individual ODOC employees as defendants. In order to hold any defendant liable under 42 USC § 1983, Thomas must show that he individually participated in the alleged violation. *Taylor v. List*, 880 F2d 1040, 1045 (9th Cir 1989). Similarly, a "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or

directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat superior* liability under section 1983." *Id* (citations omitted).

Thomas alleges that Manu participated directly in the cell extraction and also alleges that Morrow arranged for his transfer in retaliation for a true statement regarding a conspiracy cover up at OSP some 12 years earlier. However, neither his pleadings nor his submissions in response to defendants' summary judgment motion reveal any direct participation in either of these events by Belleque.[2] Accordingly, because all claims against him appear to be premised entirely on a *respondeat superior* theory, Belleque should be granted summary judgment against each of Thomas' claims.

## II.  Mootness – Claims One and Three

Claims One and Three are premised on the assertion that Thomas' transfer out of OSP was misguided (*i.e.* he poses too high a threat level to staff and inmates at a medium custody facility to allow him to be transferred there, as alleged in Claim One) or retaliatory (*i.e.* undertaken because Thomas was going to expose a conspiracy by ODOC or OSP staff to have him kill the inmate he stabbed, as alleged in Claim Three). Thomas repeatedly requested transfer back to OSP based on those allegations, and so far as this court can discern, sought no other relief related to Claims One or Three. The request for relief in the Complaint seeks damages connected only with the cell extraction. Complaint, p. 5. Thomas was transferred back to the IMU at OSP on July 11, 2007. Premo Affidavit, ¶ 11. As a result, his request for that specific relief is rendered moot, albeit without any intervention by the court, and arguably leaves only

---

[2] Thomas does accuse Belleque of failing to do his job by failing to put Thomas in DSU after Thomas arguably threatened to stab another inmate (which he actually did two weeks later). However, Thomas does not assert that Belleque was responsible for his transfer, cell extraction, or retaliation against him.

6 - FINDINGS AND RECOMMENDATION

one request for relief by Thomas, namely unspecified damages to compensate him for the cell extraction as alleged in Claim Two. Although mootness arguably eliminates any right to relief flowing from Claims One or Three, out of an abundance of caution, this court discusses below other reasons why those claims fail on this record.

### III. Exhaustion – Claim Two

The Prison Litigation Reform Act ("PLRA"), 42 USC § 1997e(a), requires inmates who file suits concerning prison conditions to exhaust all remedies prior to the filing of their § 1983 action. *Porter v. Nussle,* 534 US 516, 531-32 (2002). The PLRA's exhaustion requirement is unyielding and applies to claims alleging excessive force, even when the prisoner seeks damages unavailable in the prison's grievance process: "A prisoner must exhaust administrative remedies even when the prisoner's suit seeks monetary damages that are unavailable through the prison's grievance process . . . and even with respect to suits alleging excessive force by prison officials." *O'Guinn v. Lovelock Correctional Center*, 502 F3d 1056, 1061 (9th Cir 2007) (citations omitted).

ODOC has a grievance system in place to address inmate complaints as set forth in OAR 291-109-0100 through OAR 291-109-0140. ODOC inmates may file grievances concerning the conditions of their confinement, improper treatment by staff, lack of medical treatment, and oversight or error affecting the inmate. OAR 291-109-0140(2). Inmates must file a grievance within 30 days of the incident giving rise to the complaint. OAR 291-109-0150(2). Inmates may appeal the decision(s) or results of matters filed through the grievance process. OAR 291-109-0170. An appeal must be filed within 14 days after the grievance findings. The initial appeal goes to the functional unit manager, who is required to respond within 30 days. OAR 291-109-

0170(1)(b).  An inmate may then appeal the decision by the functional unit manager to the Assistant Director.  OAR 291-109-0170(2).

Thomas did not file a timely grievance or pursue the appeal process for his claims regarding the cell extraction.  On October 25, 2006, Thomas filed a grievance relating to the cell extraction, but that grievance was not processed because it was filed well over 30 days after the incident.  Bales Affidavit, ¶ 10 & Attachment 4; OAR 291-109-0150(2).  Because Thomas did not properly exhaust his administrative remedies regarding his cell extraction as required by the PLRA, defendants are entitled to summary judgment against Claim Two.

**IV.  Lack of Constitutional Violation – Claims One and Three**

Assuming any portion of Claim One or Claim Three are not rendered moot by Thomas' transfer back to OSP, they nevertheless fail because Thomas can show no constitutional violation.

### A.  Threat Level Posed by Thomas

In Claim One, and throughout his submissions, Thomas asserts that his transfer to TRCI (and later to SRCI) was improper because he poses too high a security threat to be housed at a medium security facility.  However, unless a transfer impermissibly infringes upon an inmate's exercise of some constitutional right, an inmate has no constitutional right to remain at a specific penal institution even if the transfer results in placement in less desirable surroundings.  *Olim v. Wakinekona*, 461 US 238, 245 (1983); *Meachum v. Fano*, 427 US 215, 224-25 (1976); *Rizzo v. Dawson*, 778 F2d 527, 530 (9th Cir 1985).  In short, it is not Thomas' prerogative to hand-select the institution at which he is housed.  A claim may lie if the transfer "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v.*

8 - FINDINGS AND RECOMMENDATION

*Connor*, 515 US 472, 484 (1995). However, nothing in the record supports the conclusion that the housing at TRCI or SRCI differed in any material respect from that afforded at OSP. Quite to the contrary, defendants have submitted evidence that DSU inmates are "housed identically regardless of the facility where they are housed." Premo Affidavit, ¶ 7. Moreover, the thrust of Claim One is not that Thomas suffered a hardship due to the transfer, but that his presence at a medium security facility presents too many "security concerns" and a heightened risk of harm to other inmates and correctional staff. Complaint, p. 3. While Thomas' concern for others is laudable, it is the job of prison staff to make status and housing assignments, and this court may not intervene absent a constitutional concern, which is lacking here.

### B. First Amendment Retaliation

In Claim Three, Thomas appears to challenge his transfer out of OSP on First Amendment grounds, *i.e.* that his transfer was in retaliation for a "true statement" he made "about a cover up that happen[ed] 12 years ago when [Morrow] was a [Captain] at OSP." Complaint, p. 4. Prisoners can bring a claim against prison officials for retaliating against them for exercising their First Amendment rights so long as the retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals. *Rizzo*, 778 F2d at 532. These goals consist of deterring future crime, preserving internal order and discipline at the institution, maintaining institutional security, and rehabilitating prisoners. *California First Amendment Coalition v. Woodford*, 299 F3d 868, 878 (9th Cir 2002), citing *Pell v. Procunier*, 417 US 817, 822-23 (1974).

At the summary judgment stage, the prisoner has the initial obligation to prove that prison officials retaliated against him for exercising his First Amendment rights and that the alleged

retaliatory action did not advance legitimate penological goals. *Barnett v. Centoni*, 31 F3d 813, 815-16 (9th Cir 1994). Thomas is unable to meet that burden.

Thomas' retaliation claim is premised upon the notion that, about a decade prior to his transfer, certain OSP officials, including Morrow (who was then an OSP Captain), conspired with Thomas to have him kill another inmate. The targeted inmate is the same inmate Thomas stabbed more than a decade later on June 18, 2006. Thomas also contends that, about two weeks prior to stabbing the other inmate, he asked Belleque what he would do if Thomas stabbed the inmate, to which Belleque responded he would "bury" Thomas (meaning place him in DSU).

Two months after stabbing the other inmate, Thomas was transferred to TRCI. On August 20, 2006, four days after his transfer, Thomas sent an inmate communication form to Morrow threatening exposure of the decade-old conspiracy and Belleque's prior knowledge of Thomas' plan to assault the other inmate if Morrow did not get Thomas transferred back to OSP. A copy of this communication is attached to the Complaint.

Retaliation claims normally involve protected activity followed by retaliatory action. Defendants correctly point out that Thomas sent the letter to Morrow *after* he was transferred. Therefore, the transfer cannot logically have been taken in retaliation for the statements in Thomas' letter. Moreover, the only conclusion supported by the record is that Thomas was temporarily moved out of OSP in part to separate him from the inmate he stabbed. In order to prevail on a claim of retaliation, Thomas must allege and prove that defendants retaliated against him for exercising a constitutional right and that the retaliatory action did not advance any legitimate penological interest or was not narrowly tailored to achieve such goals. *Hines v. Gomez*, 108 F3d 265, 267 (9th Cir 1997), *cert denied*, 524 US 936 (1998); *Pratt v. Rowland*, 65

10 - FINDINGS AND RECOMMENDATION

F3d 802, 806 (9th Cir 1995). Assuming for the sake of argument that Thomas' letter is protected activity which could support a retaliation claim if followed by adverse and retaliatory action, Thomas cannot clear the second hurdle. There is no doubt that separating a perpetrator and a victim in a prison assault is a legitimate goal which can be achieved by transferring one of the inmates to a different facility. As a result, Thomas cannot establish a First Amendment claim based on his transfer, entitling defendants to summary judgment against Claim Three.

## RECOMMENDATION

For the reasons stated above, defendants' Motion for Summary Judgment (docket #26) should be GRANTED and judgment should be entered in favor of defendants.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due February 26, 2008. If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 8th day of February, 2008.

                                                    _/s/ Janice M. Stewart _____
                                                    Janice M. Stewart
                                                    United States Magistrate Judge